IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **BILLY R. WILLIAMS**, | § |
| Plaintiff, | § § § |
| v. | §   Civil Action No. 3:03-CV-2176-L |
| **DISCO HI-TEC AMERICA, INC.**, | § § § |
| Defendant. | § |

### **MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's Motion for Summary Judgment, filed February 7, 2005. After careful consideration of the motion, response, reply, appendices, record, and applicable law, the court **denies** Defendant's Motion for Summary Judgment.

### **I. Procedural and Factual Background**

Plaintiff Billy R. Williams ("Plaintiff" or "Williams") filed this action on September 24, 2003, against Defendant Disco Hi-Tec America, Inc. ("Defendant" or "Disco") and amended his complaint on January 18, 2005. He contends that Disco discriminated against him because of his race and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. § 2000e, *et seq*., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. Disco contends, among other things, that Williams was terminated for legitimate, nondiscriminatory reasons. Disco also contends Plaintiff has waived and released his Title VII and ADEA claims, as well as all other claims, pursuant to a Confidential Resignation Agreement and General Release of Claims ("Agreement"), and has pleaded release as an affirmative defense. Def.'s Ans. to Pl.'s Amended Compl. ¶ 21. Disco contends that it is entitled to summary

**Memorandum Opinion and Order - Page 1**

judgment because of the execution of the Agreement. Williams disagrees and contends that the waiver contained in the Agreement was not knowingly and voluntarily executed. Williams also contends that the release is invalid because of "fraud, duress, material mistake, or some other defense."

Disco hired Williams on April 30, 2001. He was hired for the position of Central Regional Sales Manager with responsibilities for sales and office management, and his supervisor was Aram Kardjian. Disco is in the business of manufacturing and selling precision dicing/cutting saws and grinders and precision diamond blades and wheels that are used for the manufacturing of semiconductor and electronic components.

According to Disco, Williams, despite being counseled several times that sales in his region did not meet company expectations and that he did not address basic day-to-day management issues,[1] failed to improve his performance and perform at the level expected by Disco. Disco informed Williams that he would be discharged effective August 29, 2002. When Williams was informed that he would be terminated, Disco presented him with the Agreement. The Agreement provides in pertinent part:

> 2. Employee hereby resigns voluntarily from his employment with the Company effective as of August 29, 2002 (the "Resignation Date").
>
> 3. The Company shall provide Employee with the following benefits when this Agreement becomes effective:
>
>    a. A lump sum severance payment equal to four weeks' pay at Employee's final base pay rate, less applicable withholdings in accordance

---

[1]Disco submitted two memoranda to support its position that Williams received counseling. Williams signed both memoranda.

**Memorandum Opinion and Order - Page 2**

        with the Company's normal payroll procedures;

   b.    Employee is responsible to contact the health plan administrator and arrange for payment of health insurance premiums through COBRA if Employee is interested in continuing such coverage;

   c.    The Company agrees that it will not contest any claim for unemployment benefits that may be filed by Employee after the Resignation Date; and

   d.    Employee acknowledges that he has been paid all wages and accrued, unused vacation that Employee earned during his employment with the Company. Employee understands and acknowledges that he shall not be entitled to any payments or benefits from the Company other than those expressly set forth in this paragraph 3.

4.    Employee and his successors release the Company and its shareholders, investors, directors, officers, employees, agents, attorneys, insurers, legal successors, and assigns of and from any and all claims, actions and causes of action, whether now known or unknown, which Employee now has, at any other time had, or shall or may have against those released parties based upon or arising out of any matter, cause, fact, thing, act or omission whatsoever occurring or existing at any time up to and including the resignation date, including, but not limited to, any claims of breach of contract, wrongful termination, retaliation, fraud, defamation, infliction of emotional distress or national origin, race, age, sex, sexual orientation, disability or other discrimination or harassment under the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act, the Fair Employment and Housing Act or any other applicable law.

. . .

**Memorandum Opinion and Order - Page 3**

> 6. Employee acknowledges and agrees that he shall continue to be bound by and comply with the terms of any proprietary rights or confidentiality agreements between the Company and Employee.
>
> . . .
>
> 9. This agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior negotiations and agreements, whether written or oral, with the exception of any agreements described in paragraph 6.  This Agreement may not be modified or amended except by a document signed by an authorized officer of the Company and Employee.
>
> <u>EMPLOYEE UNDERSTANDS THAT HE SHOULD CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT AND THAT HE IS GIVING UP ANY LEGAL CLAIMS HE HAS AGAINST THE PARTIES RELEASED ABOVE BY SIGNING THIS AGREEMENT.  EMPLOYEE FURTHER UNDERSTANDS THAT HE MAY HAVE UP TO 21 DAYS TO CONSIDER THIS AGREEMENT, THAT HE MAY REVOKE IT AT ANY TIME DURING THE 7 DAYS AFTER HE SIGNS IT, AND THAT IT SHALL NOT BECOME EFFECTIVE UNTIL THAT 7-DAY PERIOD HAS PASSED. EMPLOYEE ACKNOWLEDGES THAT HE IS SIGNING THIS AGREEMENT KNOWINGLY, WILLINGLY, AND VOLUNTARILY IN EXCHANGE FOR THE COMPENSATION AND BENEFITS DESCRIBED IN PARAGRAPH 3.</u>

Agreement ¶¶ 2, 3, 4, 6, 9 (emphasis in original).  Williams signed the Agreement on August 29, 2002.  On September 6, 2002, Disco paid Williams the net amount of $4,162.09, which represented four weeks' pay at Williams's final base pay, less applicable withholdings.  The gross amount for four weeks' pay was $5,833.34.

**Memorandum Opinion and Order - Page 4**

## II. Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence

in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Defendant's Motion for Summary Judgment

#### A. ADEA Claim

The Older Workers Benefits Protection Act of 1990 ("OWBPA"), which is an amendment to the ADEA, imposes "strict, unqualified" statutory requirements upon employers that wish to enforce an employee's waiver of ADEA claims obtained by a release. *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998). An employer must comply with all requirements of the OWBPA in order for an employee to effectively waive an ADEA claim. *Id.* Substantial compliance is not adequate. *Blakeney v. Lomas Info. Sys., Inc.*, 65 F.3d 482, 485 (5th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996). A release either satisfies all OWBPA requirements, meaning a waiver made pursuant thereto may be considered "knowing and voluntary," or a release fails to meet the requirements and is voidable. *Id.*

Under the OWBPA, in order for a release set forth in a severance or resignation agreement to secure an enforceable ADEA waiver, it must, at minimum, (A) be written in a manner calculated to be understood by the employee; (B) specifically refer to rights or claims arising under the ADEA; (C) not waive rights or claims arising after the date the waiver is executed; (D) be supported by consideration in addition to anything of value to which the employee is already entitled; and (E) advise the employee to consult with an attorney before signing the Agreement. In addition, it must (F) give the employee at least 21 days within which to consider the agreement, or 45 days if the severance package offered in exchange for the waiver is being offered to a group or class of employees; (G) allow the employee to revoke the agreement for a period of at least 7 days following execution; and (H) if the employee's waiver is made in connection with an exit incentive or other employment termination program, the employer must provide written information concerning (i) the group of individuals covered by the program as well as any eligibility factors and applicable program time limits; and (ii) the job titles and ages of employees who were and were not selected for termination. 29 U.S.C. § 626(f)(1)(A)-(H) (2004).

The court has reviewed the Agreement and determines that it does not comply with the OWBPA with respect to the fifth requirement. The Agreement does not advise Williams to consult with an attorney before signing it. The applicable language states, "Employee understands that he should consult with an attorney prior to signing this agreement." Agreement ¶ 9. The OWBPA provides, among other things, that a waiver is not valid unless the employee signing the release "is advised in writing to consult with an attorney prior to executing the agreement." 29 U.S.C. § 626(f)(1)(E). While the language in the Agreement might arguably substantially comply with the statutory language, substantial compliance is inadequate. *Blakeney*, 65 F.3d at 485. The language

does not advise Williams to consult with an attorney prior to signing the Agreement, or *even* that he "should" or "ought to" consult with an attorney before signing the Agreement. The court reads the statutory language as requiring the waiver to affirmatively advise the employee to consult with an attorney, or that the employee is affirmatively advised that he or she should or ought to consult with an attorney. This is so because the provisions of the OWBPA are precise, "strict, unqualified" requirements for employers imposed by Congress, and courts cannot relax requirements that Congress lawfully imposes. *Oubre*, 522 U.S. at 427. The word "advise" means "to give advice to," "caution," "warn," " recommend," or "inform." *Merriam-Webster's Collegiate Dictionary* 19 (11th ed. 2004). The language in the Agreement is passive and does not "advise" Williams to do anything. The language does not "give advice to,"[2] "caution," "warn," "recommend," or "inform" Williams to consult with an attorney; it only makes Williams aware of a right that he has, but does not "advise," him to take advantage of, act on, or take any action regarding that right. As the Agreement fails to advise Williams to consult with an attorney prior to signing it, as explicitly required by the statute, the waiver is invalid and cannot be enforced against Williams.[3] Accordingly, Disco is not entitled to summary judgment on Williams's ADEA claim.[4]

**B. Title VII Claim**

---

[2]"Advice" means "[g]uidance offered by one person . . . to another." *Black's Law Dictionary* 59 (8th ed. 2004). The language in the Agreement offers or provides Williams no guidance whatsoever to consult with an attorney before signing it.

[3]Disco's argument that Williams ratified the Agreement by retaining the severance payments (consideration) he received for signing it is foreclosed by the *Oubre* decision. The Supreme Court made it unequivocally clear that ratification of a contract cannot be used to frustrate the OWBPA's "practical operation" or "formal command." *Oubre*, 522 U.S. at 427.

[4]Having decided that the language in the Agreement fails to satisfy at least one of the requirements of the OWBPA, the court need not determine whether the Agreement satisfies the remaining requirements.

**Memorandum Opinion and Order - Page 8**

The legal framework for a release for Title VII claims is set forth in *Smith v. Amedisys, Inc.*, 298 F.3d 434 (5th Cir. 2002). The Title VII test, like the ADEA test per the OWBPA, focuses on whether the release is "knowing and voluntary." *Smith*, 298 F.3d at 441 (quoting *Rogers v. General Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986)). In deciding whether an executed release was knowing and voluntary, the court applies a "totality of the circumstances" approach.

Under the "totality of the circumstances" approach, the employer bears the initial burden of establishing that its former employee signed a release that addresses the claims at issue, received adequate consideration, and breached the release. Once this is accomplished, the burden shifts to the former employee "to demonstrate that the release was invalid because of fraud, duress, material mistake, or some other defense." *Smith*, 298 F.3d at 441. The court uses a six-factor test to determine whether the former employee has met the burden of "establishing a defense to the validity of the release." *Id*. The six factors are:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of [the] plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether plaintiff was represented by or consulted with an attorney, and (6) whether [the] consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id.* (quoting *O'Hare v. Global Natural Res.*, 898 F.2d 1015, 1017 (5th Cir. 1990)).

From the state of the record, it appears that Disco has met its initial burden, namely, that Williams signed a release which addresses Title VII; that he received adequate consideration, or at least consideration beyond that to which he was entitled by law or contract; and that Williams breached the Agreement by filing this lawsuit. On the other hand, it appears that Williams has raised

**Memorandum Opinion and Order - Page 9**

questions about the second, third and fifth factors previously set forth by the court.[5] From the record, it appears that Williams was told about the Agreement and signed it on the *same* day (August 29, 2002) that he was informed that he would be terminated. Additionally, reading the language of the Agreement and considering how rapidly events transpired on August 29, 2002, cause one to reasonably infer that Williams had little or no role in deciding the terms of the Agreement. The Agreement appears to be a "form agreement" drawn up by Disco with no input from Williams and one that merely finalizes a course of action already decided upon by Disco. Finally, given the language in the Agreement regarding counsel and given that the notice of termination, the actual termination of Williams, and the execution of the Agreement all appear to have taken place on August 29, 2002, it is reasonable to infer that Williams was not represented by and did not consult an attorney. These factors raise questions whether Williams had ample time to consider the Agreement thoroughly and therefore make a knowing and voluntary waiver regarding his termination. Under the "totality of the circumstances" approach, the court must be satisfied that Plaintiff has created no genuine issue of material fact regarding the six factors. Three of the six factors give the court enough concern that it cannot say that no genuine issue of material fact exists as to whether the waiver regarding Plaintiff's Title VII claim was knowing and voluntary.

### IV. Conclusion

For the reasons set forth herein, the court concludes that Disco has failed to establish that the waiver in question complies with the ADEA. Also, the court determines that on the current state of

---

[5]Although Williams submits no evidence per se, evidence in the record and reasonable inferences that can be drawn from the evidence raise genuine issues of material fact about some of the factors.

**Memorandum Opinion and Order - Page 10**

the record, a genuine issue of material facts exists as to whether the waiver was knowing and voluntary under applicable Title VII law. For these reasons, the court **denies** Defendant's Motion for Summary Judgment.

**It is so ordered** this 15th day of September, 2005.

                                                  Sam A. Lindsay
                                                  United States District Judge